Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| CARLOS ALBERTO LEÓN GONZÁLEZ CARLOS ALBERTO LEÓN TORRES<br><br>Recurridos<br><br>v.<br><br>BANCO POPULAR DE PUERTO RICO UNIVERSAL INSURANCE COMPANY<br><br>Peticionarios | KLCE202301025 | C*ertiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2021CV02270<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el juez Rodríguez Casillas, el juez Salgado Schwarz y el juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 28 de noviembre de 2023.

Comparecen el Banco Popular de Puerto Rico y Universal Insurance Company (peticionarios) mediante *certiorari* para que revisemos la *Resolución* emitida el 11 de agosto de 2023,[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), la cual, declaró *No Ha Lugar* la solicitud sentencia sumaria presentada por los peticionarios.

Evaluados los escritos de las partes comparecientes, resolvemos **denegar** el auto solicitado.

**-I-**

Del expediente ante nuestra consideración surge que el Sr. Carlos Alberto León González y su hijo Carlos Alberto León Torres (recurridos) presentaron una *Demanda Enmendada* el **4 de octubre**

---

[1] Notificada el 17 de agosto de 2023.

Número Identificador
RES2023 _____

**de 2021**.[2] Allí, se adujo que el Sr. Carlos Alberto León González (señor León González) sufrió una caída luego de utilizar un cajero automático de la sucursal Monte Mall de Banco Popular de Puerto Rico (BPPR), pues al intentar salir del área, se volteó hacia su lado derecho y tropezó con uno de los bolardos de concreto que había colocado BPPR. El señor León González tuvo que acudir a Sala de Emergencia, donde determinaron que tenía una fractura conminuta del húmero del hombro izquierdo, por lo que fue operado y sometido a tratamiento médico. Estimaron en $250,000.00 los daños sufridos por el señor León González. También, el señor León Torres, hijo reclamó angustias mentales por $25,000.00. Por lo que, le solicitaron al foro de instancia que se condenara el pago solidario de las sumas reclamadas.

De otra parte, el BPPR y su aseguradora sometieron su contestación a la demanda el **16 de noviembre de 2023**,[3] y negaron los daños e indicaron que el banco cumplió con deber de actuar como una persona prudente y razonable al mantener sus instalaciones optimas y libres de riesgos; por lo que, de haber ocurrido la caída, fue exclusivamente por actos propios del señor León González.

Luego de varias incidencias procesales, el **17 de mayo de 2023** los peticionarios sometieron una *Solicitud de Sentencia Sumaria,*[4] en la que presentaron veinte (20) hechos materiales incontrovertidos y sometieron como evidencia la transcripción de la deposición tomada al señor León González.[5] En suma, alegaron que el recurrido reconoció —durante la deposición— que la distancia entre el bolardo con el que tropezó y el cajero automático (ATM) era lo suficientemente amplio como para caminar por allí sin tropezarse.

---

[2] Apéndice del *CERTIORARI,* págs. 1 – 5.
[3] Apéndice del *CERTIORARI,* págs. 6 – 13.
[4] Apéndice del *CERTIORARI,* págs. 43 – 85.
[5] Apéndice del *CERTIORARI,* págs. 59 – 85.

Por lo que, siendo la única prueba las declaraciones del señor León González, ello demuestra que la causa de la caída fue el descuido del recurrido. Razón por la cual, BPPR solicitó se declarara con lugar la sentencia sumaria y se desestimara la demanda.

El **5 de junio de 2023**, la parte recurrida presentó su escrito en oposición a la sentencia sumaria.[6] Entre otras cosas, arguyó que tanto la forma y manera del accidente, como la presencia de los bolardos —conforme a los códigos de construcción—, eran asuntos que estaban en controversias y no debían dilucidarse por la vía sumaria.

Atendida la solicitud y la oposición a la sentencia sumaria, el TPI emitió una *Resolución* el **11 de agosto de 2023**,[7] en la que formuló los siguientes hechos como esenciales y pertinentes sobre los cuales no hay controversia:

> *1. El señor Carlos A. León González es cliente del Banco Popular.*
> *2. El señor León González tenía 72 años al momento de los hechos.*
> *3. El demandado, Banco Popular de Puerto Rico, es una institución financiera autorizada a hacer negocios en Puerto Rico. BPPR tiene una sucursal en El Monte Town Center en Ponce, Puerto Rico ("sucursal"). Universal Insurance Company es la aseguradora de BPPR.*
> *4. La sucursal tiene un área de cajero automático, o ATM, en el exterior frente a la cual hay colocadas varias esferas de cemento, conocidas como bolardos.*
> *5. Previo al 18 de abril de 2021, el Sr. León González había utilizado el cajero automático de la sucursal en múltiples ocasiones. Solía visitarla dos veces al mes. Para entonces, había tres bolardos esféricos cerca del cajero automático en el exterior de la sucursal.*
> *6. El Sr. León González conocía de la existencia los bolardos ya que, en dichas visitas previas, los vio y caminó por el área donde están ubicados.*
> *7. Si, al caminar por dicha área, el demandante miraba por dónde se camina, veía los bolardos porque eran claramente visibles.*
> *8. El demandante nunca se había accidentado con los bolardos al caminar entre estos. Indica el demandante que [al caminar por dicha área] hay que estar pendiente de estos.*
> *9. Previo al accidente, había caminado entre los bolardos, así como por el área entre la pared donde ubica el cajero automático y el bolardo más cercano a éste, un espacio que el demandante consideraba ancho, sin tener inconveniente de ningún tipo.*

---

[6] Apéndice del *CERTIORARI*, págs. 86 – 101.
[7] Notificada el 17 de agosto de 2023.; Véase, Apéndice del *CERTIORARI*, págs. 110 – 115.

10. El Sr. León González había caminado por dicha área sin accidentarse porque -mientras caminaba- había estado pendiente de lo que había en el piso, lo cual evitó que tropezara con las esferas de cemento.

11. El domingo, 18 de abril de 2021, el Sr. León González llegó a Monte Town Center alrededor de las 10:00am para retirar dinero del cajero automático de BPPR. Éste estacionó su vehículo en el segundo estacionamiento de impedidos frente al cajero automático de la sucursal; se bajó del automóvil; y caminó en línea recta sobre la rampa frente al cajero automático. En ese momento, no había personas en el cajero y estaba soleado.

12. Para llegar hasta el cajero, el demandante caminó entre dos de los bolardos ubicados frente a la estructura.

13. Luego de que el señor León González caminara entre los bolardos, llegó al cajero automático y retiró dinero. Al terminar la transacción, dio dos pasos hacia atrás sin mirar hacia dónde caminaba ni lo que estaba haciendo, giró y cayó. El señor León González no puede precisar a qué lado giró pero sí recuerda que, cuando se volteó, tropezó con el bolardo y cayó sobre el lado izquierdo de su cuerpo.

14. El señor León González admitió que, en vez de caminar de espaldas sin fijarse en lo que había detrás y hacia dónde se dirigía, pudo haberse volteado hacia su derecha y caminar hasta su vehículo por el área que discurre entre la pared del cajero automático y el bolardo más cercano sin accidentarse. Admitió que, en lugar de hacerlo, dio dos pasos hacia atrás y, al voltearse, ocurrió el accidente.

15. El señor León González también admitió que si, en lugar de caminar hacia atrás sin mirar lo que estaba haciendo ni lo que había detrás de él, se hubiera volteado y caminado hacia el frente en dirección hacia los bolardos, pendiente de por dónde caminaba, con toda probabilidad hubiera visto los bolardos y no se hubiera tropezado.

16. El demandante sostiene que el haber colocado unas borlas de concreto a una distancia muy corta del cajero automático puede provocar tropezones o caídas a los usuarios del cajero cuando estos terminan de realizar sus transacciones y se giran para marcharse a sus vehículos.

17. El bolardo contra el que tropezó el demandante tiene una distancia de cincuenta y cinco pulgadas (55") hasta la pared del cajero automático.

18. Sin embargo, el demandante reconoce que había caminado por dicha área sin percance alguno, porque es lo suficientemente amplia como caminar por ésta sin tropezarse.

19. Si al caminar por dicha área, él miraba por dónde caminaba, veía los bolardos porque son claramente visibles.

20. El demandante no puede explicar cómo tuvo esa caída.

21. Previo al accidente, el demandante había caminado entre los bolardos, así como por el área entre la pared donde ubica el cajero automático y el bolardo más cercano a éste sin tener inconveniente de ningún tipo.

22. Según reconoció el Sr. León González, en dichas ocasiones había estado pendiente de lo que había en el piso, lo cual evitó que tropezara con las esferas de cemento. Conforme su propio testimonio, la diferencia entre sus visitas previas (durante las que discurrió por el área sin percance alguno) y la visita del 18 de abril de 2021, día de la caída, es que, en ésta última, el señor León González caminó por la misma área de forma descuidada pues dio dos pasos hacia atrás sin mirar hacia dónde caminaba ni lo que estaba haciendo, y, al girar y cayó.

23. El señor León González acudió a la sala de emergencia del Hospital San Lucas el 19 de abril de 2021.

24. El 19 de abril de 2021 en la sala de emergencia del Hospital San Lucas el señor León González fue sometido a

*radiografías, que arrojaron fractura conminuta de la cabeza del húmero y del cuello quirúrgico del hombro izquierdo.*
**25.** *El 20 de abril de 2021 el señor León González fue examinado y evaluado por el doctor Rafael Señeriz Ortiz, Ortopeda.*
**26.** *El doctor Rafael Señeriz Ortiz recomendó al señor León González una cirugía para colocar una prótesis invertida ("shoulder reverse prosthesis").*
**27.** *El 28 de abril de 2021 el señor León González fue sometido a una cirugía para colocar una prótesis invertida ("shoulder reverse prosthesis"), en las instalaciones del Hospital San Lucas, en Ponce.*
**28.** *El señor León González fue sometido a doce (12) sesiones de terapia física en las instalaciones del Hospital de Veteranos en Ponce.*[8]

En la referida resolución, el TPI declaró *No Ha Lugar* la solicitud sumaria y expresó que habían hechos esenciales y pertinentes que debían ser dilucidados en una vista ordinaria; específicamente, señaló:

*(1) Si la altura de los bordados y la distancia colocados entre ellos y entre el cajero automático, en un área de alto tráfico peatonal en dos direcciones crea una condición peligrosa.*
*(2) El monto de los daños, de concluirse que hay responsabilidad por parte de los demandados.*[9]

El **18 de septiembre de 2023**, Banco Popular de Puerto Rico y Universal Insurance Company recurren ante este foro intermedio y señalan la comisión del siguiente error:

*ERRÓ EL TPI DENEGAR LA SOLICITUD DE SENTENCIA SUMARIA A PESAR DE QUE NO EXISTE CONTROVERSIA REAL SOBRE LOS HECHOS MATERIALES QUE ESTABLECEN QUE LA CAÍDA SE DEBIÓ A LAS ACCIONES DEL DEMANDANTE AL OPTAR POR CAMINAR DE ESPALDAS SIN MIRAR, A SABIENDAS DE QUE HABÍA BOLARDOS INSTALADOS EN EL PISO.*

El **18 de octubre de 2023**, la parte recurrida presentó el escrito en oposición.

## -II-

Sabido es que el auto de *certiorari* es un vehículo procesal de carácter discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[10] La discreción

---

[8] Apéndice del *CERTIORARI*, a las págs. 112 – 115.
[9] *Id.*, a la pág. 115.
[10] *Mun. Autónomo de Caguas v. JRO Construction, Inc.*, 201 DPR 703, 711 (2019); *IG Builders et al. V. BBVAPR*, 185 DPR 307, 337 – 338 (2012).

es entendida como el poder para decidir en una forma u otra; es decir, escoger entre uno o varios cursos de acción.[11]

En ese sentido, la Regla 52.1 de Procedimiento Civil,[12] delimita las instancias en que habremos de atender y revisar las resoluciones y órdenes emitidas por los tribunales de instancia, a saber:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. […].*

Con el objetivo de que podamos ejercer de una manera sabia la facultad discrecional —de entender o no en los méritos— el certiorari, la Regla 40 del Reglamento del Tribunal de Apelaciones,[13] establece los siguientes criterios:

> *(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
> *(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
> *(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
> *(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
> *(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
> *(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
> *(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

---

[11] *García v. Asociación,* 165 DPR 311, 321 (2005).
[12] Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1.
[13] Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40.

Por lo que, al tener discreción judicial nos reservamos expedir o denegar el *certiorari.* El Tribunal Supremo ha dispuesto que:

> *[d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[14]

**-III-**

El Banco Popular de Puerto Rico y Universal Insurance Company indican que el TPI incidió al denegar la solicitud de sentencia sumaria, a pesar de que no existe controversia real sobre los hechos materiales, los cuales establecen que la caída se debió a las acciones del señor León González.

De entrada acogemos las 28 determinaciones de hechos no controvertidas de la Resolución recurrida. De igual modo, coincidimos con la denegatoria de la sentencia sumaria en cuanto a que todavía quedan hechos en controversia relativo a la altura y correcta colocación de los bolardos.

En fin, este caso no presenta ninguna de las circunstancias contempladas en la citada Regla 52.1 de Procedimiento Civil, ni encontramos justificación alguna para intervenir con la Resolución recurrida, a la luz de los criterios establecidos en la referida Regla 40 del Tribunal de Apelaciones. Nada en el expediente sugiere que el TPI haya abusado su discreción o actuó con pasión, prejuicio, parcialidad o error manifiesto, por lo que resolvemos denegar la expedición del auto de *certiorari.*

**-IV-**

Por lo fundamentos antes expuestos, **denegamos** el auto de *certiorari* solicitado.

---

[14] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones